UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MANUEL-GUY MCCOY, #438421,

                Petitioner,

                                   CASE NO. 2:20-CV-13243

v.                             HONORABLE NANCY G. EDMUNDS

MICHELLE FLOYD,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

      This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Robert Manuel-Guy McCoy ("Petitioner") was convicted of assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84, following a jury trial in the Hillsdale County Circuit Court.   He was sentenced, as a fourth habitual offender, Mich. Comp. Laws § 769.12, to 11 to 20 years imprisonment in 2017.   In his pleadings, he raises 17 claims for relief.   For the reasons set forth, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II.     Facts and Procedural History

Petitioner's conviction arises from his assault of a woman during a dispute with her

brother at a musical festival in Osseo, Hillsdale County, Michigan in 2013.   The Michigan

Court of Appeals described the relevant facts, which are presumed correct on federal

habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009), as follows:

> Defendant's conviction arose out of a late-night argument that turned
> physical, with defendant punching a bystander who attempted to intervene
> and come to the aid of her brother. On May 5, 2013, Joshua Childers and
> his girlfriend, Belinda Payne, the victim, attended the Mushroom Festival in
> Osseo, Michigan. Belinda's brother, Michael Payne, was at the festival as
> well. At approximately 3:00 a.m., defendant approached Michael and began
> discussing an old disagreement between the two men. The disagreement
> eventually turned physical. There was some dispute over who started the
> fracas, but at some point, defendant struck Michael, knocking him into the
> door of a nearby storage unit. Belinda, who saw the commotion, came to
> the aid of her brother, who appeared to be unconscious. Afraid that
> defendant would strike Michael again, Belinda told defendant to leave
> Michael alone. Childers stepped in front of defendant because he was afraid
> that defendant would strike Belinda. Brian Bowditch, one of defendant's
> acquaintances, struck Childers in the face, rendering him unconscious.
> When Childers regained consciousness, he saw defendant punch Belinda
> in the face. Recalling the incident at trial, Belinda testified that she did not
> jump on defendant or punch him before he punched her, but she may have
> yelled at him. She recalled that defendant punched her in the face, knocking
> her to the ground and rendering her unconscious. When witnesses found
> Belinda, she was lying on her back, bleeding from her face.
>
> When police officers arrived, Belinda was sitting on the ground, confused
> and disoriented, with "severe swelling" on her face. One of the officers
> opined that the multiple marks on Belinda's face indicated that she had been
> punched more than one time. Belinda was later diagnosed with nose
> fractures, fractures of the basilar skull, and brain bleeding.
>
> The prosecution charged defendant with assault with intent to commit great
> bodily harm less than murder. Before the jury began deliberations,
> defendant requested that the trial court instruct the jury on the offense of
> aggravated assault. Although defense counsel recognized that the offense

2

of aggravated assault was "not a lesser included offense," defense counsel nevertheless requested that the trial court instruct the jury on the offense because he "believe[d] that the facts support that instruction." The trial court denied counsel's request, and the jury convicted defendant of assault with intent to commit great bodily harm less than murder.

*People v. McCoy*, No. 318820, 2015 WL 774432, *1 (Mich. Ct. App. Feb. 24, 2015).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the effectiveness of trial counsel, the jury instructions, the conduct of the trial court, the validity of his sentence, and venue. The court denied relief on those claims and affirmed his conviction and sentence. *Id.* at *1-5. Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising those same claims, as well as a restitution claim. The court denied leave to appeal in a standard order, *People v. McCoy*, 498 Mich. 919, 871 N.W.2d 167 (2015), and denied reconsideration. *People v McCoy*, 499 Mich. 872, 874 N.W.2d 696 (2016). Petitioner also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *McCoy v. Michigan*, _ U.S._, 137 S. Ct. 184 (2016).

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning the failure to evaluate his competency, the effectiveness of trial counsel, the conduct of the prosecutor, the conduct of the trial court, the effectiveness of appellate counsel, cumulative error, good cause and actual prejudice, and the jury instructions. The trial court denied the motion for lack of merit. *People v. McCoy*, No. 13-37-3062 (Hillsdale Co. Cir. Ct. April 18, 2017). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied, *People v. McCoy*, No. 340731 (Mich. Ct. App. March 30, 2018), as was his motion for

reconsideration (May 3, 2018).   Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. McCoy*, 503 Mich. 914, 919 N.W.2d 783 (2018), as was his motion for reconsideration.   *People v. McCoy*, 503 Mich. 1022, 925 N.W.2d 840 (2019).

Petitioner also filed a motion for re-sentencing with the state trial court challenging his habitual offender enhancement notice, which was denied for lack of merit.   *People v. McCoy*, No. 13-37-3061 (Hillsdale Co. Cir. Ct. July 31, 2017).   He filed a delayed application for leave to appeal with the Michigan Court of Appeals, which granted the application and remanded the case to the trial court for appointment of appellate counsel). *People v. McCoy*, No. 340306 (Mich. Ct. App. Feb. 20, 2018).   Petitioner then filed a brief on appeal raising claims concerning the habitual offender notice and the separation of powers doctrine.   The Michigan Court of Appeals affirmed the trial court's decision, *People v. McCoy*, No. 340306, 2019 WL 3432531 (Mich. Ct. App. July 30, 2019), and denied reconsideration (Sept. 13, 2019).   Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.   *People v. McCoy*, 505 Mich. 996, 939 N.W.2d 274 (2020).

Petitioner thereafter filed his federal habeas petition.   He raises the following claims:

> I.   Defense counsel George Lyons committed ineffective assistance of trial counsel by not investigating and targeting the clear lesser included offense of aggravated assault, when the evidence supports the charge, because Brett Bowdich's testimony presented exculpatory evidence that Petitioner was actually targeted as retaliation for his incident involving Michael Payne, by not objecting to the trial court judge's successful intimidating/manipulation of Petitioner into not taking the stand allowing Petitioner to express his

4

state of mind and giving the jury a chance to completely evaluate the element of intent, by failing to have a qualified expert evaluate the medical record used at trial because Mr. Lyons was not qualified to evaluate the evidence without one and this prevented Petitioner an opportunity to challenge the prosecution's claims that the injury was as so serious that it threatened Ms. Payne's life or bodily function.

II.    The court's failure to offer the lesser offense of aggravated assault denied Petitioner his constitutional due process right to a fair trial.

III.    The judge committed misconduct depriving Petitioner a fair trial by intimidating/manipulating him not to testify.

IV.    Petitioner is entitled to re-sentencing because his sentence represents an upward departure from his recommended guidelines range, which the trial court failed to support with substantial and compelling reasons.

V.    The trial court abused its discretion in departing from Petitioner's sentencing guidelines where the extent of the departure was not proportionate to the offender or the offense.

VI.    Petitioner was denied a fair trial as guaranteed under both federal and state constitutions when his competency was not determined prior to subjecting him to a criminal trial proceeding.

VII.    Petitioner was denied his fundamental due process protections as guaranteed under both federal and state constitutions, when defense counsel refused to utilize the critical information and evidence uncovered by Petitioner; the result was that Petitioner was subjected to a trial for which trial counsel had no defense and no trial strategy.

VIII.    Prosecutorial misconduct deprives a defendant of due process under both federal and state constitutions, when the prosecution failed to correct perjured testimony, and withholds the fact that all his witnesses had police/criminal records, thus, depriving the jury of its right to assess the credibility of these witnesses.

IX.    Petitioner was denied a fair trial and due process when the trial court erred in handling the proceeding throughout the trial; the result of which was a tainted conviction.

X.    Petitioner was denied a fair trial as guaranteed by both state and federal constitutions when court appointed appellate counsel

5

abandoned legal representation of Petitioner on his only appeal as of right.

XI.    Petitioner was denied his fundamental protections to a fair criminal proceeding by and through the cumulative effect of error that took place at the hands of the trial court, the prosecution, defense counsel and appellate counsel.

XII.    Relief from judgment should be granted where Petitioner can establish "good cause" for not bringing his appellate issue before the court previously, and "actual prejudice" due to the issue of his unresolved competency, abandonment by defense and appellate counsels, and the egregious misconduct by the police and the prosecution.

XIII.    Petitioner was denied his fundamental due process protections as guaranteed under both state and federal constitutions, when the trial court refused to give lesser included instructions—the result of which is reversible error.

XIV.    Protected compulsory rights are deprived when a public officer fails to provide proper notice, as required by statute: and the neutral and detached judge believes he can satisfy the requirement: which increases the minimum and maximum punishment allowed to be imposed. This is a clear sign of bias.

XV.    Petitioner acted in lawful self-defense.

XVI.    Ineffective assistance of counsel violated Petitioner's Sixth Amendment rights.

XVII.    The Sixth Amendment right to counsel expanded to Petitioner's only appeal of right.

Respondent filed an answer to the habeas petition contending that it should be denied because certain claims are barred by procedural default and all of the claims lack merit.

III.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.   The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle

from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's

rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods v. Donald*, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *Williams*, 529 U.S. at 412;  *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-126 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Procedural Default

As an initial matter, Respondent contends that certain habeas claims are barred by procedural default. The Court declines to address this defense. While a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover,

10

federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and intertwined with the merits of the ineffective assistance of counsel claims, and the substantive claims are more readily decided on the merits. Accordingly, the Court shall proceed to the merits of the claims.

> **B. Merits**

>> **1. Ineffective Assistance of Trial Counsel (Claims I, VII, XVI)**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to pursue the lesser cognate offense of aggravated assault, for failing to object to the trial court's intimidation of him into not testifying at trial, for failing to call him to testify, for failing to develop a self-defense claim, for failing to hire an expert to evaluate the medical records/challenge the emergency room doctor's testimony, for failing to raise a Fourth Amendment challenge to the arrest warrant before the victim's skull fractures were discovered, for failing to request a "preliminary hearing" in the circuit court, for failing to request a self-defense instruction, and for failing to raise the

competency issue.    Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.    In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of trial counsel.    First, a petitioner must prove that counsel's performance was deficient.    This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.    Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding.    *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."    *Id.* at 690.    A reviewing court's scrutiny of counsel's performance is highly deferential.    *Id.* at 689.    There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.    *Id.* at 690.    The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Id.* at 694.    A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.    *Id.*    "On balance, the

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Petitioner raised these claims on direct appeal and collateral review. On direct appeal, the Michigan Court of Appeals applied the *Strickland* standard and denied relief. The court explained in relevant part:

> First, defendant argues that defense counsel was ineffective for failing "to target" the offense of aggravated assault. However, defense counsel did "target" the offense—he asked for an instruction on aggravated assault. Regardless, because defendant was not entitled to an instruction on aggravated assault, *see* Section II, supra, any action by counsel "to target" the offense would have been meritless. Counsel was not required to advocate a meritless position. *People v. Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).
>
> Second, defendant argues that defense counsel was ineffective for failing to object to the trial court's intimidation and manipulation of him into not testifying at trial. Because there was nothing improper about the trial court's statements to defendant, see Section III, supra, any objection by

13

defense counsel would have been futile. Counsel was not ineffective for failing to make a futile objection. *People v. Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Third, defendant argues that defense counsel was ineffective for failing to call him as a witness. However, defendant made the decision not to testify. Because the ultimate decision as to whether he would testify belonged to defendant, *see Bonilla–Machado*, 489 Mich at 419, defense counsel could not call him as a witness. Consequently, defense counsel's performance in not calling defendant as a witness did not fall below objective standards of reasonableness. *Uphaus* (On Remand), 278 Mich App at 185.

Fourth, defendant argues that counsel was ineffective by not developing a self-defense theory in his cross-examination of Belinda and Michael. According to defendant, defense counsel should have asked Michael whether he hit defendant before defendant hit him and should have asked Belinda whether she jumped on defendant's back before defendant hit her. Decisions regarding the cross-examination of witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). On direct examination, Michael testified that defendant punched him. On her direct examination, Belinda testified that, other than telling defendant to leave Michael alone, she did nothing to defendant. She expressly denied that she jumped on defendant or punched him. Defendant failed to overcome the presumption that counsel's performance was objectively reasonable. Concerning Michael, defense counsel may have thought it was best not to get a direct denial from Michael that he hit defendant. And, with regard to Belinda, defense counsel asked whether she had been prepared to jump on defendant or hit him or otherwise fight in order to stop defendant from hurting Michael, to which she answered "No, 'cause [defendant's] big." Therefore, contrary to defendant's representations on appeal, defense counsel attempted to explore this very line of questioning during his cross-examination of Belinda. Defendant has failed to overcome the presumption that counsel's performance was sound trial strategy. *Stanaway*, 446 Mich at 687.

Finally, defendant argues that defense counsel was ineffective for failing to call a medical expert, who could have given the jury "some perspective on the real seriousness of [Belinda's] injuries." The decision whether to call an expert witness is a matter of trial strategy. *People v. Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defendant has failed to overcome the presumption that counsel's performance in not calling an expert witness was sound trial strategy. *Stanaway*, 446 Mich at 687. A defendant must establish the factual predicate for his claim of ineffective assistance of counsel, *People v. Hoag*, 460 Mich 1, 6; 594 NW2d 57

14

(1999), and there is no proof on the record that a medical expert would have testified favorably for defendant.

***

According to defendant, there was a violation of his Fourth Amendment rights when an arrest warrant was issued before Belinda's basilar skull fractures were "proven" and counsel was ineffective for failing to notice and assert it. Defendant has abandoned the argument that there was a Fourth Amendment violation because he fails to cite appropriate authority or otherwise explain the claim. *See People v. Kelly*, 231 Mich App 627, 640–641; 588 NW2d 480 (1998) (stating that an appellant may not give an issue cursory treatment with little or no citation of supporting authority). Because counsel is not required to advocate a meritless position, *Chapo*, 283 Mich App at 369, and defendant has failed to show that any argument regarding the Fourth Amendment would have been meritorious, defense counsel was not ineffective for failing to notice and assert a violation of defendant's Fourth Amendment rights.

Also, according to defendant, counsel was ineffective for failing to request a "preliminary hearing" before the trial court to obtain testimony from witnesses. The court rules entitle a defendant to a preliminary examination, MCR 6.110, and defendant had one in this case. Defendant was not entitled to another hearing for the purpose of obtaining testimony from witnesses. Thus, any request for a "preliminary hearing" would have been futile. Defense counsel was not ineffective for failing to make the futile request. *Fike*, 228 Mich App at 182.

Defendant further claims that counsel was ineffective for failing to request an instruction on self-defense. However, at defense counsel's request, the trial court instructed the jury on self-defense. Defendant's claim that defense counsel was ineffective because he failed to recall any of the witnesses to establish that defendant acted in self-defense is also without merit. Defense counsel cross-examined Belinda, as well as Michael and Childers, and defendant makes no specific argument regarding what additional questions counsel should have asked them. Defendant has failed to overcome the strong presumption that counsel's cross-examination of Belinda, Michael, and Childers constituted sound trial strategy. *Stanaway*, 446 Mich. at 687.

*McCoy*, 2015 WL 774432 at *4-5, 7-8.   On collateral review, the state trial court denied

relief from judgment concluding, in pertinent part, that the claims lacked merit.   *McCoy*,

No. 15-17-3062 at *2.

The state courts' decisions are neither contrary to Supreme Court precedent nor

15

unreasonable applications of federal law or the facts.    First, to the extent that Petitioner asserts that trial counsel was ineffective for failing to pursue the lesser cognate offense of aggravated assault, for failing to object to the trial court's alleged intimidation of him into not testifying at trial, for failing to confront witness with their alleged criminal records, and for failing to raise the competency issue, he is not entitled to relief.    Given the state courts' decisions and/or this Court's ruling that the underlying claims lack merit, *see* discussion *infra*, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.    Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.    *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).

Second, Petitioner is not entitled to relief on his claim that trial counsel was ineffective for not calling him to testify at trial.    It is well-established that a criminal defendant has a constitutional right to testify in his or her own defense or to refuse to do so.    *Rock v. Arkansas*, 483 U.S. 44, 53 (1987).    "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional."    *United States v. Webber*, 208 F.3d 545, 550-551 (6th Cir. 2000).    Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant.    *Id*. at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983).    On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client."    *Hodge v. Haeberlin*, 579 F.3d 637, 639 (6th Cir. 2009).    If the defendant wants to testify, "he can reject his

16

attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." *Id*.   If the defendant fails to do so, waiver of the right to testify is presumed. *Id*.

Additionally, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy.   When making strategic decisions, trial counsel's conduct must be reasonable.   *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.   The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.   *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, as discussed *infra*, the record shows that Petitioner initially indicated that he wanted to testify, was advised of the consequences of doing so by the trial court, consulted with trial counsel, and then subsequently waived his right to testify on the record stating that he did not want to testify as a matter of trial strategy.   Consequently, he fails to overcome the presumption that he willingly agreed with counsel's advice not to testify.   *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).   Petitioner also fails to refute the presumption that counsel's advice that he not testify on his own behalf was sound trial strategy.   Had Petitioner testified he would have been subject cross-examination by the prosecutor who could have elicited damaging information from him.   Moreover, trial counsel was able to elicit testimony from other witnesses, particularly Brian Bowditch, to support a self-defense theory and to make reasonable arguments in support of that defense without Petitioner's testimony.   Petitioner was thus

not deprived of a substantial defense at trial. He fails to establish that counsel was ineffective.

Third, Petitioner is not entitled to relief on his claim that trial counsel was ineffective for failing to develop his self-defense claim by asking the victim, Belinda Payne, and her brother. Michael Payne, additional questions about their conduct prior to his assault of the victim. The cross-examination of witnesses, like deciding what evidence to present, is a matter of trial strategy. *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). Counsel's strategy in not asking such questions was reasonable because they both could have provided damaging testimony in response. Counsel did challenge their version of events, and also presented testimony in support of Petitioner's self-defense claim through Brian Bowditch. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Moreover, Petitioner fails to show that he was prejudiced by counsel's conduct as he offers no evidence to show that the victim or her brother would have provided answers favorable to the defense. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Fourth, Petitioner is not entitled to relief on his claim that trial counsel was

ineffective for failing to call an expert witness to evaluate the medical evidence and challenge the emergency room doctor's testimony. The record reveals that counsel cross-examined the doctor, discussed the concept of a "terminal fall," and elicited testimony that the victim's brain bleed was not "severe." *See* 8/27/13 Trial Tr., ECF No. 14-4. PageID.1066-1075. Counsel's decision in this regard was a matter of trial strategy and Petitioner fails to overcome the presumption that it was reasonable. Petitioner also fails to show that he was prejudiced by counsel's conduct given that he does not offer an affidavit or other evidence from an expert to support this claim. As noted *supra*, conclusory allegations are insufficient to justify habeas relief. Petitioner fails to show that counsel was ineffective.

Fifth, Petitioner is not entitled to relief on his claim that trial counsel was ineffective for not challenging his arrest warrant on Fourth Amendment grounds before the victim's skull fractures were proven. Petitioner fails to provide legal support for this claim. Moreover, under Michigan law, assault with intent to commit great bodily harm less than murder requires "an intent to do serious injury of an aggravated nature," but an actual injury need not occur. *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017) (quoting *People v. Brown*, 267 Mich. App. 141, 703 N.W.2d 230 (Mich. Ct. App. 2005)). In this case, the severity of the victim's injuries was apparent to the responding officer at the scene. *See* 8/27/13 Trial Tr., ECF No. 14-4, PageID.1021, 1024-1025. Petitioner's claim is baseless.

Sixth, Petitioner is not entitled to relief on his claim that trial counsel was ineffective for failing to seek a "preliminary hearing" before the state circuit court. Under

Michigan law, Petitioner was entitled to a preliminary examination pursuant to Michigan Court Rule 6.110.   It was conducted in this case.   *See* 5/22/13 Prelim. Ex. Tr., ECF No. 14-2.   The Michigan Court of Appeals ruled that he was not entitled to an additional preliminary hearing.   That state law ruling is binding on federal habeas review.   *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Counsel cannot be ineffective for failing to raise a meritless request.   *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499.

Seventh, Petitioner is not entitled to habeas relief on his claim that trial counsel was ineffective for failing to request a self-defense instruction.   This claim is belied by the record which shows that the trial court instructed the jury on self-defense.   *See* 8/28/13 Trial Tr., ECF No. 14-5, PageID.1162-1164.   Consequently, even if counsel did not request those instructions, Petitioner cannot show that he was prejudiced by counsel's conduct because the instructions were given to the jury.   Petitioner fails to establish that counsel was ineffective.

Eighth, to the extent that Petitioner asserts that trial counsel "abandoned him," i.e. that counsel perform so deficiently that he was constructively denied counsel, he is not entitled to relief.   The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest.   *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692; *United*

States v. Cronic, 466 U.S. 648, 659 & n. 25 (1984)). The Supreme Court has stated that the first category – the complete denial of counsel – encompasses both actual and constructive denials of counsel, and that a constructive denial of counsel can occur where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659. For an ineffective assistance claim to come within this limited exception to Strickland, "the attorney's failure must be complete." Bell v. Cone, 535 U.S. 685, 697 (2002). The distinction is between "bad lawyering" and "no lawyering," Woodard v. Collins, 898 F.2d 1027, 1028 (5th Cir. 1990); see also Moss, 286 F.3d at 861, and the difference is not one of degree, but one of kind. Bell, 535 U.S. at 697.

Petitioner does not show that trial counsel completely failed to subject to the prosecution's case to meaningful adversarial testing. To the contrary, the record indicates that counsel actively represented Petitioner at trial. Counsel filed a pretrial motion to quash, gave an opening statement at trial, made relevant objections, cross-examined every prosecution witness, called a defense witness, gave a solid closing argument, and consulted with Petitioner throughout the proceedings. Petitioner's ineffective assistance of counsel issues are run-of-the-mill trial error claims subject to the Strickland standard. See, e.g., Bell, 535 U.S. at 697-698. Counsel's alleged failures do not amount to a complete failure to provide a defense and the presumption of prejudice does not apply. Petitioner must show that he was actually prejudiced by counsel's alleged errors in order to obtain habeas relief. He fails to do so. Petitioner

fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### 2. Jury Instructions (Claims II, XIII).

Petitioner also asserts that he is entitled to habeas relief because the trial court refused to instruct the jury on the cognate lesser offense of aggravated assault as requested by defense counsel. Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

Petitioner raised this claim on direct appeal.  The Michigan Court of Appeals denied relief finding that aggravated assault is not a necessarily included lesser offense of assault with intent to commit great bodily harm less than murder and the trial court did not err or violate due process by denying Petitioner's request for such an instruction at trial.  *McCoy*, 2015 WL 774432 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]  First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  *See, e.g., Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law.  *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the trial court's refusal to instruct the jury on aggravated assault rendered his trial fundamentally unfair.  The Supreme Court has declined to determine whether due process requires jury instructions on lesser included

---

[1]To the extent that the Michigan Court of Appeals did not address the federal aspect of this claim on direct appeal, *see McCoy*, 2015 WL 744432 at *7 n. 3, the Court reviews that issue de novo.  *See, e.g, Stermer v. Warren*, 959 F.3d 704, 722-724 (6th Cir. 2020) (discussing the standards of review in cases where the Michigan appellate courts issue form-like orders).  The Court reaches the same result under either a deferential or a de novo standard of review.

offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980). In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it. The Supreme Court has since held that state courts are not constitutionally required to instruct capital case juries on crimes which are not lesser included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998). The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-797 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). Assault with intent to commit great bodily harm less than murder is not a capital offense – and aggravated assault is a cognate offense, not a lesser included offense, of that crime. Consequently, an aggravated assault instruction was neither statutorily nor constitutionally required. Petitioner fails to state a claim upon which habeas relief may be granted as to this issue.

Additionally, even as to lesser included offenses, the Sixth Circuit has stated that:

> ... such a claim warrants habeas relief, if at all, only in the rare instance that 'a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law.'" *Bagby*, 894 F.2d at 795 (suggesting that habeas relief would be warranted only if the failure to give the requested instruction was "likely to have resulted in the conviction of an innocent person").

*Richardson v. Campbell*, No. 21-3421, 2021 WL 6773144, *2 (6th Cir. Nov. 2, 2021), cert. den., _ U.S. _, 142 S. Ct. 1389 (2022). Petitioner makes no such showing.

Moreover, even if Petitioner states a cognizable claim, he fails to show that the failure to instruct the jury on aggravated assault was improper.   Such an instruction was not warranted based upon the evidence at trial which showed that Petitioner punched the female victim violently enough and/or repeatedly enough to cause nose fractures, fractures of the basilar skull, and brain bleeding.   Such action was sufficient to support his assault with intent to commit great bodily harm less than murder conviction. Petitioner fails to show that the jury instructions, as given, rendered his trial fundamentally unfair.   Habeas relief is not warranted on these claims.

### 3.      Judicial Misconduct/Bias (Claims III, IX)

Petitioner also asserts that he is entitled to habeas relief because the trial court engaged in judicial misconduct by intimidating him into not testifying in his own defense at trial and by making certain comments and rulings at trial and sentencing (as set forth in other claims).   Respondent contends that these claims are barred by procedural default and/or that they lack merit.

As discussed *supra*, a criminal defendant has a constitutional right to testify in his or her own defense or to refuse to do so.   *Rock*, 483 U.S. at 53.   The right to testify is personal to the defendant, may be waived only by the defendant, and the waiver must be knowing and intentional.   *Webber*, 208 F.3d at 550-551.

Additionally, the Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case.   *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997). Judicial misconduct claims involve two types of cases.   One group concerns charges of

"judicial bias" stemming from a judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955).  The second group concerns charges of "judicial misconduct" in which the judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555-556 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).

Adverse rulings themselves are not sufficient to establish bias or prejudice.  *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*).  A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment."  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008).  In reviewing a judicial bias claim, a federal habeas court should presume that the judge properly discharged his or her official duties.  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

Petitioner raised these claims on direct appeal.  The Michigan Court of Appeals denied relief ruling that the trial court did not intimidate Petitioner into not testifying at trial and concluding that the trial court's comments and rulings did not amount to misconduct or bias against Petitioner.  *McCoy*, 2015 WL 774432 at *2-4, 8-9.

26

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Petitioner's judicial misconduct/bias claim is belied by the record.   First, the record reveals that the trial court did not coerce or intimidate Petitioner into not testifying at trial.   When Petitioner told the trial court that he was going to testify, the court correctly informed him that he would be subject to cross-examination if he did so and, that if he did not testify, the court would instruct the jury that his silence could not be used against him.   When defense counsel stated that they were still discussing the matter, the court responded that it would re-visit the issue outside the presence of the jury and ask Petitioner about his decision to testify or to not testify at trial.   Petitioner indicated that he understood his options. *See* 8/27/13 Trial Tr., ECF No. 14-4, PageID.1047-1048.   Near the end of trial, the court conducted the promised inquiry, and Petitioner stated that he had consulted with counsel and that, in the end, it was his decision not to testify as a matter of trial strategy.   *Id*. at PageID.1117.   The record thus indicates that the trial court merely informed Petitioner about the consequences of his decision about whether to testify and that Petitioner knowingly and voluntarily waived his right to testify in his own defense.

Second, Petitioner fails to allege facts which show that the trial court was biased against him.   He neither alleges nor establishes that the trial court had a "personal interest" in his criminal case.   He also fails to show that the trial court had a "deep-seated favoritism or antagonism that would make fair judgment impossible" such that the court engaged in judicial misconduct.   Rather, he merely challenges the trial court's rulings, or lack thereof, in his case, essentially reiterating his other grounds for

27

relief.   *See, e.g.,* Pet., ECF No. 1, PageID.26-28.   Such allegations merely contest the trial court's legal rulings on his claims and are insufficient to establish that the trial court engaged in judicial misconduct or were otherwise biased against him.   *See Liteky*, 510 U.S. at 555.   "[A] habeas petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" *Torres v. MacLaren*, 798 F. App'x 916, 920 (6th Cir. 2020) (quoting *Black v. Carpenter*, 866 F.3d 734, 744 (6th Cir. 2017)).   Petitioner fails to overcome the presumption that the trial court properly discharged its duties.   Habeas relief is not warranted on this claim.

### 4.    Sentencing (Claims IV, V)

Petitioner also asserts that he is entitled to habeas relief because his sentence is invalid.   Specifically, he asserts that the state trial court imposed a sentence above the guideline range without providing substantial and compelling reasons for doing so, that the upward departure is not proportionate to the offense or the offender, and that his sentence was imposed in violation of the Sixth Amendment.   Respondent contends that these claims are not cognizable on habeas review and that they lack merit.

A sentence within the statutory limits is generally not subject to federal habeas review.   *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *see also Hutto v. Davis*, 454 U.S. 370, 373-374 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature).   Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the

petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.   *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentence is within the statutory maximum sentence for his offense as a fourth habitual offender.   *See* Mich. Comp. Laws §§ 750.84 (authorizing a maximum sentence of 10 years imprisonment for assault with intent to commit great bodily harm less than murder); 769.12 (authorizing a maximum sentence of life or a lesser term for a fourth habitual offender where the subsequent felony is punishable by a maximum term of five years or more or life and authorizing a sentence of up to 15 years imprisonment for a fourth habitual offender where the subsequent felony is punishable by less than 5 years imprisonment).   Consequently, his sentence is insulated from habeas review absent a federal constitutional violation.

Petitioner raised these claims on direct appeal.   The Michigan Court of Appeals denied relief finding that the trial court provided substantial and compelling reasons for the upward departure and adequately showed that the sentence was proportionate. *McCoy*, 2015 WL 774432 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2]   Petitioner's claims challenging the trial court's upward sentencing departure and the proportionality of his sentence are not cognizable on federal habeas review because they are state law claims.   *See Howard*

---

[2]To the extent that the state courts did not consider the federal aspects of Petitioner's sentencing claims, the Court's review of such issues is de novo.   *Stermer*, 959 F.3d at 722-724. The Court reaches the same result under either a deferential or a de novo standard of review.

*v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Austin v. Jackson*, 213 F.3d 298, 300-301 (6th Cir. 2000) (state court did not abuse its discretion nor violate federal due process by imposing a sentence above the state sentencing guidelines); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009) (denying habeas relief on sentencing departure claim); *see also Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (ruling that the Eighth Amendment does not require strict proportionality and that Michigan prisoner's claim that his sentence was disproportionate was not cognizable on habeas review). Any alleged error in departing from the recommended minimum guideline range does not merit habeas relief. As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68. Petitioner fails to state a claim upon which federal habeas relief may be granted as to such issues.

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful

opportunity to rebut contested sentencing information).   To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.   *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992).   Petitioner makes no such showing.   He had a sentencing hearing before the state trial court with an opportunity to contest the scoring of the offense variables and the sentencing decision.   Petitioner fails to establish that the trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct.   Habeas relief is not warranted on such a basis.

Petitioner also fails to show that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.   The United States Constitution does not require strict proportionality between a crime and its punishment.   *Harmelin*, 501 U.S. at 965.   A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"   *Austin*, 213 F.3d at 302 (internal citation omitted).   As discussed, Petitioner's sentence is within the statutory maximum of life imprisonment for a fourth habitual offender.   The state trial court thus acted within its discretion in imposing his sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.

Petitioner also cannot establish that his sentence was imposed in violation of his Sixth Amendment rights.   Such a claim arises from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013).   In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that

31

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court clarified that the 'statutory maximum' is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. In *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be proven beyond a reasonable doubt (or admitted by a defendant). *Alleyne*, 570 U.S. at 111-112.

In *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines violate the Sixth Amendment because the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 498 Mich. at 364. The court's remedy was to make the guidelines advisory only. *Id*. at 364-365, 391. The United States Court of Appeals for the Sixth Circuit has since issued a decision agreeing with *Lockridge* and ruling that *Alleyne* clearly established that Michigan's pre-*Lockridge* mandatory minimum sentencing guidelines scheme violated the Sixth Amendment. *Robinson v. Woods*, 901 F.3d 710, 716-718 (6th Cir. 2018). The Sixth Circuit explained that "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id*. at 716.

32

*Alleyne* applies because it was decided on June 17, 2013 and Petitioner was sentenced on September 30, 2013.   *Id.* at 715 (citing Supreme Court cases which hold that Supreme Court decisions apply to pending criminal cases including those which are on direct appeal or not yet final).   *Alleyne*, however, does not afford Petitioner habeas relief.   Even assuming that the trial court improperly relied upon judicially-found facts in scoring the guidelines in violation of the Sixth Amendment, such error was harmless.   A constitutional error that implicates trial procedures is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).   Sentencing errors, like other non-structural trial errors, are subject to harmless error analysis.   *See Washington v. Recuenco*, 548 U.S. 212, 222 (2006) (*Blakely* error is not structural and is subject to harmless error review); *Fults v. Quails*, 635 F. App'x 316, 321 (6th Cir. 2016) (same).

In *Lockridge*, the Michigan Supreme Court ruled that a defendant who "received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines ... cannot show prejudice from any error in scoring the OVs in violation of *Alleyne*."   *Lockridge*, 498 Mich. at 394.   The Sixth Circuit has since held that *Alleyne* does not provide relief where "the minimum sentence set by the court was based on the court's exercise of discretion, not on judicial-fact finding that mandatorily increased the minimum sentence."   *Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, *5 (6th Cir. Jan. 9, 2018) (citing *Lockridge*).   Such is the case here.

33

Any error in determining Petitioner's minimum sentencing guideline range was harmless because the trial court exercised its discretion and departed above that range in imposing Petitioner's sentence based upon his extensive criminal history, rate of recidivism, and lack of rehabilitation. The trial court made it clear at the sentencing hearing that the guidelines did not sufficiently take into account such factors. *See* 9/30/13 Sent. Hrg. ECF No. 14-6, PageID.1191-1193. Given such circumstances, this Court is convinced that Petitioner's sentence would be no different absent the alleged sentencing guidelines scoring error. *See United States v. Brown*, 444 F.3d 519, 522 (6th Cir. 2006) (court was "certain" of harmless error where trial court made discretionary upward departure from guideline range); *see also Soler-Norona v. Nagy*, No. 17-11357, 2022 WL 4295401, *8 (E.D. Mich. Sept. 16, 2022) (denying habeas relief on similar claim); *Morgan v. Rivard*, No. 16-10950, 2019 WL 1227958, *7 (E.D. Mich. March 15, 2019) (same); *Alexander v. Hoffner*, No. 15-CV-11364, 2018 WL 4658682, *18 (E.D. Mich. Sept. 27, 2018) (same). Habeas relief is not warranted on these claims.

### 5. Competency (Claim VI)

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to sua sponte evaluate his competency to stand trial. Specifically, he states that he was on pain medication (oxycodone) due to a recent hip surgery. Respondent contends that this claim lacks merit.

It is well-established that a criminal defendant may not be tried unless he or she is competent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for

competency to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding of the proceedings against him or her.   *Id*. at 396-398.   Due process is violated by a trial court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency.   *Pate v. Robinson*, 383 U.S. 375, 385-386 (1966).   The question for a reviewing court in such a case is whether a reasonable judge, situated as was the trial court judge, should have experienced a "bona fide doubt" about the defendant's competency.   *See Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citing *Drope v. Missouri*, 420 U.S. 162, 173 (1975)); *see also Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011).   Silence by a defendant and defense counsel on the issue of competency at the time of the proceedings is significant evidence that there is no bona fide doubt about the defendant's competency.   *See, e.g., United States v. Gignac*, 301 F. App'x 471, 475 (6th Cir. 2008) (plea case).

Petitioner raised this claim on collateral review in the state courts.   The state trial court denied relief from judgment concluding, in pertinent part, that the claim lacks merit.   *McCoy*, No. 15-17-3062 at *2.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Having reviewed the record, this Court concludes that a reasonable judge sitting the trial court's place would not have a bona fide doubt as to Petitioner's competency at the time of trial or sentencing.   There was no indication that Petitioner was unable to sufficiently consult with defense counsel or have a proper understanding of the criminal proceedings.   In

fact, Petitioner's comments at trial and sentencing were responsive and coherent.

*See, e.g.,* 8/27/13 Trial Tr., ECF No. 14-4, PageID.975, 1047-1048, 1117, 1120;

8/28/13 Trial Tr., ECF No. 14-5, PageID.1172-1173, 1175; 9/30/13 Sent. Tr., ECF No.

14-6, PageID.1179, 1183-1184, 1194.   Additionally, neither the prosecutor nor

defense counsel expressed concerns about Petitioner's competency.   Petitioner also

fails to provide evidence in support of his assertion that he was on medication which

affected his ability to consult with trial counsel or to understand the proceedings.   As

discussed, conclusory allegations without evidentiary support are insufficient to warrant

federal habeas relief.   *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d

at 335-336; *Washington*, 455 F.3d at 733.   Habeas relief is not warranted on this

claim.

### 6.        Prosecutorial Misconduct (Claim VIII)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor

engaged in misconduct by failing to request a competency evaluation, failing to make

defense counsel perform better, eliciting hearsay from Deputy Moore, admitting the

recording of Brian Bowditch's police interview, failing to disclose Joshua Childers'

police statement, failing to disclose witnesses' police/criminal records, failing to prove

intent, and failing to correct the victim's allegedly false testimony that she had not been

convicted of a crime of theft or dishonesty.   Respondent contends that these claims

are procedurally defaulted and that they lack merit.

The United States Supreme Court has made clear that prosecutors must "refrain

from improper methods calculated to produce a wrongful conviction."   *Berger v. United*

*States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard). The standard "is a very general one, leaving courts more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-639 (6th Cir. 2017).

It is well-established that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 682 (1985). To find a *Brady* violation the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by the prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

The Supreme Court has also made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constitutes perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

Petitioner raised these claims on collateral review in the state courts. The state trial court denied relief from judgment concluding, in part, that the claims lack merit. *McCoy*, No. 15-17-3062 at *2.

The state court's denial of relief is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the prosecutor should be held accountable for defense counsel's conduct or the trial court's conduct, or based upon the alleged errors raised in his other grounds for habeas relief (e.g., competency), he fails to show that the prosecutor is responsible for such conduct and/or that he (Petitioner) was prejudiced and denied a fundamentally fair trial given the state courts' and this Court's denial of relief on those claims. *See* discussions *supra* and *infra*.

Second, to the extent that Petitioner asserts that the prosecutor committed misconduct by eliciting alleged hearsay from Deputy Moore and Brian Bowditch, he is not entitled to relief. The record reveals that the trial court sustained some of defense counsel's objections and overruled others. *See, e.g.,* 8/27/13 Trial Tr., ECF No. 14-4, PageID.1025, 1029, 1105. To the extent that the trial court sustained those objections, Petitioner cannot show that he was prejudiced by the prosecutor's conduct because the disputed testimony was not admitted into evidence. To the extent that the trial court overruled those objections and allowed the testimony to be admitted, Petitioner cannot show that the prosecutor erred, let alone that the conduct was fundamentally unfair. The trial court's ruling that evidence is admissible under state law is binding on federal habeas review. *See Bradshaw*, 456 U.S. at 76. Additionally, a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly when the trial court admits the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) ("A prosecutor may rely in good faith on evidentiary rulings

made by the state trial judge and make arguments in reliance on those rulings.").[3]

Third, to the extent that Petitioner asserts that the prosecutor failed to disclose Joshua Childers' supplemental police statement, he fails to establish that the supplemental report was, in fact, not disclosed to the defense before or during trial. As discussed, conclusory allegations without evidentiary support are insufficient to warrant federal habeas relief. *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733. Furthermore, even if the supplemental report was not disclosed, Petitioner fails to show that it was material given that it appears to concern Childers' desire for the police to charge Bowditch with assaulting him, not Petitioner's assault upon the victim in this case. *See* 8/26/13 Report, ECF No. 14-7, PageID.1279. Petitioner also fails to show that the supplemental report included relevant exculpatory or impeachment evidence which would have affected the outcome at trial. His conclusory allegations do not justify habeas relief.

Fourth, to the extent that Petitioner asserts that the prosecutor failed to disclose the police/criminal records of witnesses (including the victim), he fails to show that any such records were relevant, material, or admissible at trial. To be sure, the Michigan Rules of Evidence limit the use of such impeachment evidence to convictions within the

---

[3]Petitioner's related assertion that Deputy Moore illegally recorded a phone call with witness Brian Bowditch (and testified about it) is based upon a misinterpretation of the transcript. The record shows that Deputy Moore testified about his written report detailing and quoting Bowditch's statements, not an audio recording. *See* 8/27/13 Trial Tr., ECF No. 14-4, PageID.1108-1109.

previous 10 years and to crimes which involve an element of theft or dishonesty. *See* Mich. R. Evid. 609(a). Petitioner fails to allege facts to show that any such impeachment evidence existed and/or that it was not disclosed to the defense at the time of trial. Again, as noted, conclusory allegations are insufficient to warrant federal habeas relief. *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733.

Fifth, to the extent that Petitioner asserts that the prosecution failed to prove intent, such a claim amounts to a sufficiency of the evidence claim, not a prosecutorial misconduct claim. As explained *infra*, the prosecution presented sufficient evidence of the requisite intent to support Petitioner's assault with intent to commit great bodily harm less than murder conviction through the testimony of the victim, the other witnesses, and the medical evidence detailing the severity and extent of her injuries.

Sixth, to the extent that Petitioner asserts that the prosecution failed to correct the victim's testimony about her criminal history, he fails to establish that the victim lied and/or that the prosecutor failed to correct perjured testimony. When defense counsel asked the victim whether she had ever been convicted of a crime involving theft or dishonesty, she replied "no." When defense counsel ask her if she had been convicted of obstructing justice, she did not answer because the prosecutor objected, and the trial court sustained the objection. *See* 8/27/13 Trial Tr., ECF No. 14-4, PageID.1014-1015. Petitioner fails to allege facts which show that the victim's answers were untruthful. Additionally, as discussed, a prosecutor may rely upon a trial court's evidentiary rulings. *Cristini*, 526 F.3d at 900. Petitioner fails to show that the

prosecutor erred.

Lastly the Court notes that the record shows that the trial court properly instructed the jurors on the law, including the elements of the charged offense, the presumption of innocence, reasonable doubt, self-defense, the proper consideration of the evidence, and the burden of proof, explained that the attorneys' statements, arguments, and questions are not evidence, and directed the jurors to evaluate the credibility of witnesses and to decide the case based solely on the evidence.   *See* 8/28/13 Trial Tr., ECF No. 14-5, PageID.1153-1164.   Such instructions mitigated the potential prejudice to Petitioner.   *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).   Jurors are presumed to follow the court's instructions.   *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").   Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.   Habeas relief is not warranted on this claim.

### 7.   Effectiveness of Appellate Counsel (Claim X, XVII)

Petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the claims that he raised in his supplemental brief and/or on collateral review in the state courts on direct appeal.   Respondent contends that this claim lacks merit.

In order to establish ineffective assistance of counsel, a habeas petitioner must

show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing

on' those more likely to prevail."   *See Smith v. Murray*, 477 U.S. 527, 536 (1986)

(quoting *Barnes*, 463 U.S. at 751-752).   "Generally, only when ignored issues are

clearly stronger than those presented will the presumption of effective assistance of

appellate counsel be overcome."   *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.

2002).   Appellate counsel may deliver deficient performance and prejudice a

defendant by omitting a "dead-bang winner," defined as an issue which was obvious

from the trial record and would have resulted in reversal on appeal.   *Meade v.*

*Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).   In other words, the failure to

raise an issue on appeal can only be ineffective "if there is a reasonable probability that

inclusion of the issue would have changed the result of the appeal."   *McFarland v.*

*Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Petitioner raised this claim on collateral review in the state courts.   The state

trial court denied relief from judgment concluding, in relevant part, that the claim lacks

merit.   *McCoy*, No. 15-17-3062 at *2.

The state court's denial of relief is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts.   Petitioner fails to show

that by omitting the claims raised in his supplemental brief or on collateral review

appellate counsel's performance fell outside the wide range of professionally

competent assistance.   Appellate counsel raised substantial issues on direct appeal

including claims challenging the jury instructions, the trial court's conduct, the

effectiveness of trial counsel, and the validity of his sentence.   Petitioner raised similar

and additional claims on direct appeal in his own supplemental brief, which were

considered and denied by the Michigan Court of Appeals. None of the pro per or collateral review claims are "dead-bang winners" given the state courts' and/or this Court's denial of relief on those claims. Petitioner fails to show that appellate counsel's strategic decisions fell outside the wide range of professionally competent assistance. *See, e.g., Hand v. Houk*, 871 F.3d 390, 411 (6th Cir. 2017).

Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct given the Michigan Court of Appeals' denial of relief on his pro per claims on direct appeal, the state courts' denial of relief on collateral review, and this Court's denial of relief on the underlying claims. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner fails to show that appellate counsel was ineffective. Habeas relief is not warranted on this claim.

### 8. Cumulative Error (Claim XI)

Petitioner next asserts that he is entitled to habeas relief based upon cumulative effect of the alleged errors at trial and/or on appeal. Respondent contends that his claim is not cognizable on habeas review.

The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine*, 291 F.3d at 447. Furthermore, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v.*

45

*Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and *Moore*).   Petitioner thus fails to state a claim upon which relief may be granted as to this issue.   Moreover, given that the individual claims lack merit, Petitioner cannot establish that he is entitled to relief based upon cumulative error. Habeas relief is not warranted on this claim.

### 9.      Denial of Motion for Relief from Judgment (Claim XII)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his motion for relief from judgment.   Respondent contends that this claim is not cognizable as a distinct issue on habeas review.

There is no federal constitutional right to state collateral review of state criminal convictions.   *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).   Consequently, allegations of deficiencies in state collateral review proceedings fall outside the scope of federal habeas review because they involve "'collateral matters' as opposed to 'the underlying state conviction giving rise to the prisoner's incarceration.'"   *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (quoting *Kirby v. Dutton*, 794 F.2d 245, 247-248 (6th Cir. 1986)) (involving claim challenging the denial of the opportunity to present recantation evidence in a state post-conviction proceeding); *see also Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 386-387 (6th Cir. 2002).   Petitioner thus fails to state a claim upon which habeas relief can be granted as to this issue (distinct from the underlying claims).   Habeas relief is not warranted on this claim.

### 10. Habitual Offender Notice (Claim XIV)

Petitioner next asserts that he is entitled to habeas relief because the habitual offender notice was defective. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Petitioner raised this claim on collateral review and the Michigan Court of Appeals ultimately denied relief finding that the trial court did not abuse its discretion in denying re-sentencing because any error in the habitual offender notification process, e.g., filing a proof of service, was harmless. The court declined to address Petitioner's constitutional argument based upon his failure to properly brief the issue. *McCoy*, 2019 WL 3432531 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[4] First, Petitioner's claim that he received inadequate notice of the habitual offender enhancement under Michigan law fails to state a claim which is cognizable upon federal habeas review. *See, e.g., Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240-1241 (E.D. Mich. 1993); *see also Threat v. Harry*, No. 2:17-CV-12465, 2018 WL 2431707, *7 (E.D. Mich. May 30, 2018) (denying relief on similar claim); *MacArthur v. Curtin*, No. 13-CV-11307, 2014 WL 3767835, *15-16 (E.D. Mich. July 31, 2014) (adopting magistrate judge's report and citing cases). It is well-settled that habeas relief may not be based upon a perceived

---

[4]To the extent that the Michigan Court of Appeals did not address the merits of the constitutional claim, the Court's review of that issue is de novo. *Stermer*, 959 F.3d at 722-724. The Court reaches the same result under either a deferential or a de novo standard of review.

violation of state law.  *Estelle*, 502 U.S. at 67-68.

Second, due process does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender enhancement.  Due process only requires that a defendant be given reasonable notice and an opportunity to be heard.  *Oyler v. Boles*, 368 U.S. 448, 452 (1962).  The record in this case shows that the prosecutor filed a habitual offender notice with the trial court on May 29, 2013, *see* Reg. of Actions, ECF No. 14-1, PageID.753, that defense counsel was aware of the enhancement given that the trial court issued a pretrial statement on June 4, 2013 which included a copy of the habitual offender notice, *see* Trial Ct. Ord. Den. Re-Sent., ECF No. 14-10, PageID.1285; Pet. App. Brf., ECF No. 14-13, PageID.1666, and so was Petitioner given that the trial court recognized his fourth habitual offender status and Petitioner admitted to having three prior felony convictions at the close of trial, *see* 8/28/13 Trial Tr., ECF No. 14-5, PageID.1172-1173, and Petitioner had the opportunity to challenge his sentencing enhancement during the proceedings before the state trial court.  *Id.*; 9/30/13 Sent. Hrg., ECF No. 14-6, PageID.1179.  Additionally, Petitioner does not dispute that he had at least three prior felony convictions that justified the fourth habitual offender sentencing enhancement.  Due process requires nothing more.  *Oyles*, 368 U.S. at 452-454; *see also Brown v. Nagy*, No. 19-1847, 2019 WL 7761722, *8 (6th Cir. Dec. 16, 2019) (denying a certificate of appealability on similar habitual offender notice claims).  Habeas relief is not warranted on this claim.

### 11.    Self-Defense Claim (Habeas Claim XV)

Lastly, Petitioner asserts that he is entitled to habeas relief because he is

actually innocent. Specifically, he alleges that he acted in self-defense and the prosecution failed to prove that he did not act in self-defense beyond a reasonable doubt. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Petitioner apparently did not raise this specific claim as a basis for relief in the state courts on either direct appeal or collateral review of his conviction. Accordingly, the Court shall review the claim de novo.

Having conducted such a review, the Court concludes that Petitioner is not entitled to habeas relief on this claim. First, claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. The Supreme Court has not decided whether freestanding actual innocence claims are cognizable on habeas review. *See House v. Bell*, 547 U.S. 518, 555 (2006) (expressly declining to resolve the issue). The Sixth Circuit, however, has "repeatedly indicated that such claims are not cognizable" on habeas review. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (listing cases)). This Court is bound by the Sixth Circuit's ruling. Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Second, to the extent that Petitioner asserts that he is entitled to habeas relief

because the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense, he fails to state a viable habeas claim.   The federal Constitution does not require the prosecution to prove the nonexistence of affirmative defenses.   *See Smith v. United States*, 568 U.S. 106, 110 (2013); *Patterson v. New York*, 432 U.S. 197, 210 (1977); *Richardson v. Lebanon*, 384 F. App'x 479, 482 (6th Cir. 2010) (the "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime").   Under Michigan law, self-defense is an affirmative defense.   *See People v. Dupree*, 486 Mich. 693, 709-710, 788 N.W.2d 399 (2010).   Consequently, any failure by the prosecutor to disprove self-defense does not implicate a federal constitutional concern.   *See Hayes v. Brown*, No. 22-1527, 2023 WL 3716831, *3 (6th Cir. Jan. 10, 2023) (denying a certificate of appealability), cert. denied, No. 22-7326, _U.S. _, 2023 WL 3696208 (May 30, 2023); *Williams v. Brown*, No. 1:20-CV-11111, 2023 WL 2776048, *3 (E.D. Mich. April 4, 2023) (denying habeas relief on similar claim).   And to the extent that Petitioner asserts that the prosecution failed to disprove that he acted in self-defense beyond a reasonable doubt as a matter of state law, he fails to state a claim upon which relief may be granted.   As discussed, habeas relief does not lie for perceived errors of state law.   *Estelle*, 502 U.S. at 67-68.

Third, the prosecution presented sufficient evidence to support Petitioner's assault with intent to commit great bodily harm less than murder conviction.   The Federal Due Process Clause "protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).   The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).   "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).   The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Id.* at 788-789.

Under Michigan law, the elements of assault with intent to commit great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Raybon*, 867 F.3d at 632 (quoting *People v. Brown*, 267 Mich. App. 141, 703 N.W.2d 230 (Mich. Ct. App. 2005)).   Assault with intent to do great bodily harm less than murder is a specific intent crime which requires "an intent to do serious injury of an aggravated nature," but an actual injury need not occur. *Id.*

In this case, the victim testified she ran toward Petitioner and yelled at him to stop hitting her brother, that Petitioner punched her in the face, and that she suffered serious and lasting head injuries, including skull fractures, a brain bleed, and a broken nose.   *See* 8/27/28 Trial Tr., ECF No. 14-4, PageID.986-992.   Such testimony provided sufficient evidence that Petitioner committed the assault and that he acted with the requisite intent.   The testimony of a victim alone can be constitutionally sufficient to sustain a conviction.   *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).   Additionally, the testimony from witnesses and the medical evidence provided further evidence to support Petitioner's conviction.

Petitioner challenges the victim's and the witnesses' credibility, the jury's evaluation of the evidence presented at trial, and the inferences the jury drew from that testimony and evidence.   However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.   *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").   The jury's verdict was reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established Petitioner's guilt of assault with intent to commit great bodily harm less than murder beyond a reasonable doubt.   Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.   *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Petitioner makes no such showing.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.   *See* Fed. R. App. P. 24(a).   Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:   July 26, 2023